UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON KAY CLARK, | No. 2:14-cv-0851 AC (TEMP) |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

PROCEDURAL BACKGROUND

In July of 2010, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on June 30,

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). See ECF Nos. 8 & 10.

1

2010. (Transcript ("Tr.") at 16, 173-79.) Plaintiff's application was denied initially, (id. at 123-27), and upon reconsideration. (Id. at 137-41.) Plaintiff requested a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on August 2, 2012 and August 3, 2012. (Id. at 49-105.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 49-50.)

In a decision issued on September 7, 2012, the ALJ found that plaintiff was not disabled. (Id. at 29.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since June 30, 2010, the alleged onset date (20 CFR 404.1571 *et seq*).
>
> 3. The claimant has the following severe impairments: depressive disorder, frozen right shoulder, degenerative disc disease of the lumber and cervical spine (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can sit for 8 hours requiring a change of position every 30 minutes to one hour without leaving the work stations, stand or walk 30-45 minutes at a time for a total of 6 hours in an 8-hour day. She could not climb ladders, ropes or scaffolds, and has no limitations in the left upper extremity. In the right upper extremity she can occasionally lift above the head or shoulder, and lift in all directions. She is able to interact appropriately with the general public, coworkers and supervisors. She has no limitation in her ability to receive, remember and carryout simple job instructions; occasionally receive, remember and carryout detailed job instructions, job related judgments and able to make judgments and adjustments to changes in the workplace.
>
> 6. The claimant is capable of performing past relevant work as a cashier. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

////

////

> 7. The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2010, through the date of this decision (20 CFR 404.1520(f)).

(Id. at 18-29.)

On March 5, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's September 7, 2012 decision. (Id. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on April 4, 2014.

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt.

> 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In her pending motion plaintiff asserts the following three principal claims: (1) the ALJ erred in his treatment of the medical opinion evidence; (2) the ALJ improperly rejected plaintiff's own subjective testimony; and (3) the ALJ's question to the Vocational Expert was incomplete.

### I. **Medical Opinion Evidence**

Plaintiff challenges the ALJ's treatment of the medical opinions offered by Lynn Holmquist, David E. McGee-Williams and Lynne Fiore. Although the ALJ's decision provides a detailed and thorough recitation of the opinions offered by these individuals, the ALJ concludes his analysis of all the medical opinion evidence in a single lengthy paragraph that is vague and conclusory, and ends by simply asserting that:

> Dr. McGee-Williams, Dr. Fiore and physician assistant Holmquist's conclusions are inconsistent with the other treatment records, they lack probative value. The undersigned gives those opinions little evidentiary weight.

(Tr. at 28.)

In this regard, the ALJ's decision properly and appropriately recounted the opinion of Lynn Holmquist, a physician's assistant, ("PAC), who had seen plaintiff "monthly since March 2009 for cervical disc disease, shoulder pain and frozen shoulder." (Id. at 25.) The ALJ then went on to recount PAC's Holmquist's summary of plaintiff's symptoms and limitations.

4

Specifically, the ALJ acknowledged that it was PAC's Holmquist's opinion, in relevant part, that plaintiff's limitations restricted her to sitting and standing/walking for 30 minutes at a time for a total of four hours in an eight-hour day, but plaintiff would need to "get up and walk around for ten minutes every 30 minutes," and would need to shift positions and take unscheduled breaks three to four times a shift. (Id.) Moreover, according to PAC Holmquist, plaintiff could occasionally lift up to 10 pounds, rarely lift 20 pounds, and "would miss work four days each month." (Id. at 25-26.)

Despite fully recounting PAC's Holmquist's opinion, the ALJ stated that he afforded "[l]ittle weight" to PAC Holmquist's opinion stating simply that the opinion was rendered by "a physician (sic) assistant and not an acceptable medical source." (Id. at 28) As noted above, the ALJ also stated that "Holmquist's conclusions are inconsistent with other treatment records, they lack probative value," and, therefore, were given "little evidentiary weight." (Id.)

Although the opinion of a physician's assistant is not an opinion from an acceptable medical source, it is an "other source" opinion.[2] See 20 C.F.R. §§ 404.1513(d)(1). Opinions and evidence from other sources, such as physician's assistants, are important and must be evaluated by the ALJ. See Garrison v. Colvin, 759 F.3d 995, 1013-14 (9th Cir. 2014) (the ALJ erred by failing to recognize "other source that can provide evidence about the severity of a claimant's impairments and how it affects the claimant's ability to work"); SSR 06-03p, 2006 WL 2329939, at *3 ("Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). The ALJ may only discount evidence from an "other source," such as a physician's assistant, if the ALJ gives a germane reason to each witness for doing so. See Britton v. Colvin, 787 F.3d 1011, 1013 (9th Cir. 2015); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012); Petty v. Colvin, 954

---

[2] "However, a physician's assistant may be considered to be an acceptable medical source where the assistant consults frequently and works closely with a physician and thus acts as an agent of the doctor in the relationship with the patient." Xiong v. Astrue, No. 1:09-cv-0928 SKO, 2010 WL 3715135, at *6 (E.D. Cal. Sept. 15, 2010) (citing In Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996)).

F.Supp.2d 914, 926 (D. Ariz. 2013) ("An ALJ is free to discount testimony from other sources, but as the Commissioner concedes, he must give reasons germane to each witness for doing so."). Here, the ALJ failed to offer any reason for rejecting PAC's Holmquist's opinion aside from the bare assertion that the opinion, along with the opinions of Dr. McGee-Williams and Dr. Fiore, was inconsistent with other, unspecified, treatment records.

The ALJ's decision also discussed the opinion of Dr. David E. McGee-Williams, a "Clinical Psychologist Neuropsychology." (Tr. at 245.) Dr. McGee-Williams examined plaintiff on January 27, 2010, February 22, 2010, March 4, 2010, March 5, 2010, and April 7, 2010, during which time he administered the Halstead-Reitan Neuropsychological Test Battery for Adults, the Wechsler Adult Intelligence Scale-III, the Wechsler Memory Scale-III, the Woodcock Johnson-III Test of Cognitive Abilities (Visual-Auditory Learning subtest), the MMPI-2, a Neuropsychological History Questionnaire, the Neuropsychological Deficit Scale for Adults and a clinical interview. (Id.) Although Dr. McGee-Williams examined plaintiff most recently in April of 2010, Dr. McGee-Williams submitted his report to the ALJ on May 6, 2011, and noted that because more than a year had passed since he examined the plaintiff he could not "comment on the patient's current status." (Id. at 244.)

The ALJ noted that IQ tests administered by Dr. McGee-Williams placed plaintiff "in the borderline range," that her Wechsler Memory Scale-III score placed plaintiff in the "extremely low" range, and that plaintiff "obtained a general neuropsychological deficit scale score of 52 which places her in the moderately impaired range." (Id. at 24-25.) Plaintiff's "most significant levels of impairment occurred in the areas of higher-order cognitive processing, incidental memory function, non-visually mediated spatial motor skills, higher-level attention concentration, and cognitive flexibility." (Id. at 25.) "When one calculates the Halsted Impairment Index (composed of the seven most brain-sensitive subsets) it is found that 100% of these tests are in the impaired range." (Id.) The ALJ also noted that it was the opinion of Dr. McGee-Williams that this "was a generalized brain impairment pattern, as there are no significant left/right hemispheric

////

////

6

differences," and that this was "a long-standing brain impairment pattern present, in all probability, since birth."³ (Id.)

The ALJ's opinion, however, expressly "sets aside" the report of Dr. McGee-Williams, because Dr. McGee-Williams "had seen the claimant once previously," and "stated on May 6, 2011 that he was unable to assess the claimant's current mental functioning." (Id. at 28.) As was true of PAC Holmquist and as noted above, after discussing other medical opinion evidence, the ALJ asserts in a vague and conclusory manner that the opinion of Dr. McGee-Williams was "inconsistent with other treatment records . . . lack[s] probative value," and, therefore, [was] given "little evidentiary weight." (Id.)

However, it is clear that Dr. McGee-Williams had seen the plaintiff on more than one occasion, as his opinion states that he examined plaintiff on five occasions. (Id. at 245.) Moreover, it is entirely unclear why the opinion of an examining physician, and a specialist, should be set aside or given little weight simply because the physician saw the plaintiff on only one occasion.⁴ Examining physicians often see the claimant on only one occasion.

Additionally, the fact that Dr. McGee-Williams was unable to comment on plaintiff's condition as of May 6, 2011, provides no basis for the ALJ's decision to set aside his opinion. The question before the ALJ was whether plaintiff had been under a disability from June 30, 2010, through the date of the decision. (Id. at 29.) Although it is not clear exactly when Dr.

---

³ Although not discussed in the ALJ's decision, the testing administered by Dr. McGee-Williams also found that if plaintiff "engaged in a particular task and is interrupted, she is likely to have serious difficulty returning to the original task without undue levels of inefficiency," that plaintiff "demonstrated difficulty sustaining attention/concentration and perform (sic) mental work under increasing time pressure and demand," and that plaintiff "demonstrated severe impairment" in higher-order cognitive processing. (Tr. at 247.) Moreover, Dr. McGee-Williams also opined, with regard to plaintiff's long-standing brain impairment, that "[t]he psychological effects are undoubtedly going to include frustration, anger and probable depression," and that "[s]imply attempting to negotiate the demands of everyday life effectively, with the kinds of deficits and lack of general intellectual power seen here, is going to be very difficult." (Tr. at 249.)

⁴ Generally greater weight should be given to the "'opinion of a specialist about medical issues related to his or her area of specialty.'" Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(5)).

1  McGee-Williams drafted his opinion, it had to have been sometime on or after April 7, 2010, the
2  date he last examined plaintiff.
3    "Where evidence predating the alleged date of disability is made part of the record, the
4  regulations require the Commissioner to consider that evidence." Cotton v. Colvin, No. 5:14-CV-
5  425-FL, 2015 WL 5714912, at *3 (E.D. N.C. Sept. 29, 2015) (citing 20 C.F.R. § 404.1520(a)(3)
6  ("We will consider all evidence in your case record when we make a determination.")); see also
7  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The ALJ must consider all medical
8  opinion evidence."); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005) ("there is no
9  valid reason to exclude consideration of medical records dated prior to Vandenboom's alleged
10 date of onset"); Sayers v. Colvin, No. 3:14-CV-00253-RCJ-WGC, 2015 WL 5092669, at *7 (D.
11 Nev. Aug. 25, 2015) (rejecting Commissioner's assertion "that the ALJ was not required to
12 discuss [medical opinions] because they were not significant or probative as they were rendered
13 prior to the alleged amended onset date").
14   Moreover, the ALJ's vague and conclusory assertion that the opinion of Dr. McGee
15 Williams was "inconsistent with the other treatment records," is not sufficient. (Tr. at 28.)  In this
16 regard, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing
17 nothing more than ignoring it, asserting without explanation that another medical opinion is more
18 persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his
19 conclusion." Garrison, 759 F.3d at 1012-13.
20   With respect to Dr. Fiore, a psychologist, on June 21, 2012, Lynne Fiore, Ph.D.,[5]
21 completed a Mental Residual Functional Capacity Questionnaire. (Tr. at 608-12.)  Although the
22 ALJ's opinion states that Dr. Fiore had "seen the claimant once on April 17, 2012 for chronic
23 major depressive disorder and developmental problems," (id. at 27), Dr. Fiore's opinion states
24 that plaintiff was seen on two occasions, April 17, 2012, and June 5, 2012. (Id. at 608.)  The ALJ
25 recounted Dr. Fiore's opinion, noting that Dr. Fiore "sees the claimant for individual therapy to
26 reduce depression and pain management skills," that the plaintiff had "moderate-severe

---

[5] At one point, the ALJ's decision mistakenly refers to Dr. Fiore as an "M.D." (Tr. at 27.)

8

depression," "has confusion and difficulty talking at times," and "[b]ased on Dr. McGee-Williams neurocognitive evaluation" and testing plaintiff had "serious limitations in mental functioning," and "a brain impairment since birth impacting her job performance, mental health and daily living expectations." (Id. at 27.) The ALJ also noted that Dr. Fiore opined that plaintiff could likely "not hold a job due to disabilities."[6] (Id.)

The ALJ stated with respect to Dr. Fiore's opinion that:

> Dr. Fiore gave very restrictive mental limitations noting that the claimant has moderate-severe depression. She opined that the claimant's condition has not changed since the report of Dr. McGee-Williams on April 7, 2010. Dr. Fiore's assessed limitations are too restrictive for the objective findings in the record. Dr. Fiore's statement that the claimant has a brain impairment since birth impacting her job performance, mental health and daily living expectations and that she could "probably not hold a job due to disabilities" is given no probative value here. The claimant has held jobs for 2-3 years at a time. Clearly, the claimant does not have a brain impairment since birth making her unable to hold a job.

(Tr. at 28.)

The ALJ, however, may not reject Dr. Fiore's opinion by simply asserting that the "assessed limitations are too restrictive for the objective findings in the record" or as "inconsistent with the other treatment records." In this regard, the weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen, 80 F.3d at 1285; Bates v.

---

[6] Although not discussed in the ALJ's decision, Dr. Fiore also evaluated plaintiff's mental abilities and aptitudes needed to do unskilled work, semiskilled and skilled work, and particular types of jobs. With the exception of her abilities to interact appropriately with the general public, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, Fiore found that plaintiff was either seriously limited, but not precluded or unable to meet competitive standards. (Tr. at 610-11.)

1  Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).  The uncontradicted opinion of a treating or
2  examining physician may be rejected only for clear and convincing reasons, while the opinion of
3  a treating or examining physician that is controverted by another doctor may be rejected only for
4  specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at
5  830-31.  As noted above, "an ALJ errs when he rejects a medical opinion or assigns it little
6  weight while doing nothing more than ignoring it, asserting without explanation that another
7  medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a
8  substantive basis for his conclusion."  Garrison, 759 F.3d at 1012-13.
9       Moreover, with respect to Dr. Fiore's statements concerning whether plaintiff has had a
10  brain impairment since birth and her inability to "hold a job," although it is not clear from the
11  ALJ's opinion, Dr. Fiore actually made two separate statements in response to two separate
12  portions of the Mental Residual Functional Capacity Questionnaire.  In this regard, when asked to
13  explain plaintiff's limitations in her abilities and aptitude to do particular job types, Dr. Fiore
14  responded that plaintiff "has a brain impairment since birth impacting job performance, mental
15  health and daily living expectations."  (Tr. at 611.)  A later question asks Dr. Fiore to estimate
16  how often plaintiff's impairments would cause her to be absent from work, and Dr. Fiore
17  responded that plaintiff "probably couldn't hold a job due to disabilities afore mentioned."  (Tr. at
18  612.)  Although evidence that plaintiff has held a job would certainly be inconsistent with Dr.
19  Fiore's assertion that plaintiff could not hold a job due to her disabilities, it is not inconsistent
20  with Dr. Fiore's opinion that plaintiff has had a brain impairment since birth nor is it a specific
21  and legitimate reason supported by substantial evidence in the record for discrediting Dr. Fiore's
22  entire opinion.
23       Accordingly, for the reasons stated above, the court finds that the ALJ's treatment of the
24  medical opinion evidence constituted error.  Plaintiff is, therefore, entitled to relief with respect to
25  this claim.
26  **II.     Subjective Testimony**
27       The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's
28  credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ's decision fails to identify what portions of plaintiff's testimony were credible and what portions of testimony undermined her complaints. The ALJ's decision does

recount plaintiff's testimony, including her testimony that she "cannot walk one hour; sit for 4 hours . . . is unable to stand for 30 minutes at a time," and "lies down 3-4 hours at a time." (Tr. at 22-23.) However, the ALJ's decision then rejects plaintiff's testimony by stating simply that although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" plaintiff's "statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with" the ALJ's residual functional capacity assessment. (Id. at 24.) In this regard, the ALJ's decision does not provide a clear and convincing reason for rejecting plaintiff's subjective testimony regarding her symptoms.

Accordingly, plaintiff is also entitled to summary judgment in her favor with respect to this claim as well.

### III. Complete Hypothetical

Plaintiff also argues that in determining that she was able to perform past relevant work the ALJ relied on the testimony of the Vocational Expert ("VE") that was provided in response to an inadequate hypothetical question which failed to account for all of plaintiff's limitations. ECF No. 13 at 12.

While an ALJ may pose a range of hypothetical questions to a VE based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted). See also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings."); Palomares v. Astrue, 887 F.Supp.2d 906, 919 (N.D. Cal. 2012) ("Since the analysis of RFC was flawed and not based on

the whole record, the VE's testimony based thereon has no evidentiary value, and the ALJ's finding that Mr. Palomares can perform his previous work is not based on substantial evidence in the whole record."); cf. SSR 83-14 ("Any limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work.").

Here, because the ALJ erroneously rejected the opinions of PAC Holmquist, Dr. Fiore, Dr. McGree-William and plaintiff's own subjective testimony the hypothetical question posed by the ALJ to the VE did not include all the limitations indicated by that evidence. (Tr. at 100-04.) Because the ALJ's hypothetical question to the VE did not reflect all of plaintiff's limitations, the ALJ could not properly rely on the VE's testimony to make the determination that plaintiff was able to perform past relevant work. See Bray, 554 F.3d at 1228 ("If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."); Werthy v. Astrue, 882 F.Supp.2d 1202, 1235 (D. Or. 2011) ("The ALJ's hypothetical question to the VE, although consistent with the ALJ's RFC assessment, failed to include all of Werthy's limitations and restrictions. The ALJ therefore could not rely on the VE's testimony to make a determination that Werthy is able to work."); see also Robbins v. Social Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006) (in posing a hypothetical to VE "an ALJ is not free to disregard properly supported limitations").

Accordingly, the court finds that plaintiff is also entitled to summary judgment in her favor with respect to her claim that the ALJ failed to pose a legally adequate hypothetical question to the VE.

## SCOPE OF REMAND

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting

> evidence, whether claimant testimony or medical opinion; and
> (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021. See also Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, although the ALJ committed several significant errors, it is also true that the nature of the ALJ's errors renders a considerable amount of evidence unevaluated and that the record contains conflicting evidence as to whether or not plaintiff is in fact disabled. Accordingly, this matter will be remanded for further proceedings.

On remand, the ALJ shall consider and evaluate the opinions of Dr. McGee-Williams and Dr. Fiore and provide specific and legitimate reasons supported by substantial evidence in the record, if any portion of those opinions are discredited. The ALJ shall also consider plaintiff's subjective testimony and, if any portion of plaintiff's testimony is found to be not credible, the ALJ shall provide clear and convincing reasons. Finally, the ALJ shall also consider the opinion of PAC Holmquist and, if that opinion is rejected, the ALJ shall provide a germane reason for doing so. If the ALJ receives testimony from a VE the ALJ shall ensure that the VE's hypothetical question accounts for all of plaintiff's limitations.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF. No. 13) is granted;
2. Defendant's cross-motion for summary judgment (ECF. No. 14) is denied;
3. The Commissioner's decision is reversed for the reasons indicated above; and

////

////

4. This matter is remanded for further proceedings consistent with this order.

DATED: March 8, 2016

_/s/ Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE